**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| MYESHA MURPHY<br>1409 Saint Paris Pike<br>Springfield, Ohio 45504 | ) ) ) ) | CASE NO.<br><br>JUDGE: |
| -and- | ) ) | |
| JAYSE MURPHY<br>1409 Saint Paris Pike<br>Springfield, Ohio 45504 | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | **COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF** |
| HONDA DEVELOPMENT &<br>MANUFACTURING OF AMERICA, LLC<br>24000 Honda Parkway<br>Marysville, Ohio 43040 | ) ) ) ) ) | **JURY DEMAND ENDORSED<br>HEREIN** |
| **Serve Also:**<br>HONDA DEVELOPMENT &<br>MANUFACTURING OF AMERICA,<br>LLC<br>c/o Corporation Service Company<br>1160 Dublin Road, Suite 400<br>Columbus, Ohio 43215 | ) ) ) ) ) ) ) ) | |
| -and- | ) ) | |
| TREVEN MARCHAL<br>404 Linden Street<br>West Liberty, Ohio 43357 | ) ) ) | |
| -and- | ) ) | |
| BRENNON JENKINS<br>c/o Honda Development & Manufacturing<br>of America, LLC<br>24000 Honda Parkway<br>Marysville, Ohio 43040 | ) ) ) ) ) ) | |



-and- )
)
JESSICA COONEY )
308 W Central Avenue )
Delaware, Ohio 43015 )
)
)
Defendants. )

Plaintiffs Myesha Murphy ("Mrs. Murphy") and Jayse Murphy ("Mr. Murphy") (collectively, "the Murphys"), by and through undersigned counsel, as their Complaint against Defendants Honda Development & Manufacturing of America, LLC ("Honda"), Treven Marchal, Brennon Jenkins, and Jessica Cooney state and aver the following:

**PARTIES, JURISDICTION, & VENUE**

1. The Murphys, husband and wife, are residents of the city of Springfield, Clark County, Ohio.

2. Honda is a domestic limited liability company that does business at 24000 Honda Parkway, Marysville, Ohio 43040.

3. Based on information and belief, Marchal is a resident of the state of Ohio.

4. Based on information and belief, Jenkins is a resident of the state of Ohio.

5. Based on information and belief, Conney is a resident of the state of Ohio.

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that the Murphys are alleging federal law claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 28 U.S.C. § 2000e, the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981"), and the Pregnant Workers' Fairness Act ("PWFA") 42 U.S.C. § 2000gg.

7. This Court has supplemental jurisdiction over the Murphys' state law claims pursuant to 28 U.S.C. § 1367, as the Murphys' state law claims are so closely related to their federal law



claims that they form part of the same case or controversy under Article III of the United States Constitution

8.   Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Honda does a sizeable portion of its business in this District; it maintains a place of business in this District; and the wrongs herein alleged occurred and/or originated in this District.

9.   On or about June 17, 2025, the Equal Employment Opportunity Commission ("EEOC") issued a Notice of Right to Sue letter to Mrs. Murphy regarding Mrs. Murphy's EEOC Charge. See Plaintiffs' Exhibit 1.

10.  On or about May 16, 2025, the EEOC issued a Notice of Right to Sue letter to Mr. Murphy regarding Mr. Murphy's EEOC Charge. See Plaintiffs' Exhibit 2.

11.  Mrs. Murphy has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(a).

12.  Mr. Murphy has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(a).

13.  On or about May 29, 2025, the Ohio Civil Rights Commission ("OCRC") issued Notice of Right to Sue letters to Mrs. Murphy regarding Mrs. Murphy's OCRC Charges filed against Marchal and Jenkins. See Plaintiffs' Exhibit 3.

14.  On or about March 6, 2025, the OCRC issued Notice of Right to Sue letters to Mr. Murphy regarding Mr. Murphy's OCRC Charges filed against Marchal and Cooney. See Plaintiffs' Exhibit 4.

15.  The Murphys' claims arise out of the same series of transactions or occurrences and there are common questions of fact between them.



**FACTS**

16. Mrs. Murphy is a former employee of Honda.

17. Mrs. Murphy began working for Honda on or about April 19, 2019.

18. Mrs. Murphy worked for Honda at Honda's Marysville Auto Plant located at 24000 Honda Parkway, Marysville, Ohio 43040 ("Marysville Auto Plant") during all relevant times.

19. Mrs. Murphy worked for Honda as a Production Associate in the final repair area of the paint department during all relevant times.

20. Mrs. Murphy's job duties included correcting paint defects on cars that had already gone through the paint process.

21. Mrs. Murphy is African American.

22. Mrs. Murphy was well qualified for her position and could perform the essential functions of her job.

23. Mr. Murphy is a former employee of Honda.

24. Mr. Murphy began working for Honda on or about April 1, 2019.

25. Mr. Murphy worked for Honda at the Marysville Auto Plant during all relevant times.

26. Mr. Murphy worked for Honda as a Line Support Staff in the final repair area of the paint department during all relevant times.

27. Mr. Murphy's job duties included assisting production associates with correcting paint defects on cars that had already gone through the paint process.

28. Mr. Murphy is African American.

29. Mr. Murphy was well qualified for his position and could perform the essential functions of his job.

30. In or around 2021, Marchal became Mrs. Murphy's Line Support Staff.

4



31. Marchal is White.

32. Marchal did not play a role in hiring Mrs. Murphy.

33. Line support staff have the authority to discipline production associates.

34. Line support staff have the authority to direct daily work and provide feedback to production associates assigned to them.

35. In or around August 2022, Marchal and Mrs. Murphy disagreed about the most efficient way to run the final repair area of the paint department.

36. Later in August 2022, Marchal brought Mrs. Murphy into an impromptu meeting with Donald Tumeo.

37. Tumeo was a Production Manager at the time.

38. Tumeo was Mrs. Murphy's supervisor.

39. Tumeo is White.

40. Tumeo did not play a role in hiring Mrs. Murphy.

41. Marchal lied to Tumeo and told him that Mrs. Murphy had intentionally slowed down production.

42. Tumeo verbally disciplined Mrs. Murphy based on Marchal's claim that Mrs. Murphy was intentionally slowing down production.

43. Mrs. Murphy reported the unjust disciplinary action to Honda's human resources.

44. A few days later, in August 2022, Mrs. Murphy met with Tumeo and Honda's human resources to revisit the impromptu meeting with Tumeo and Marchal.

45. Tumeo admitted to Mrs. Murphy that he discovered Marchal had lied about Mrs. Murphy intentionally slowing down production.

46. Tumeo apologized for the misunderstanding.

5



47. Tumeo withdrew the disciplinary action.

48. Following the withdrawal of the disciplinary action, Marchal began being overly critical of Mrs. Murphy's work.

49. Marchal and Mrs. Murphy's working relationship became tense and confrontational.

50. On or about September 18, 2022, the Murphys met with Marchal to repair Marchal and Mrs. Murphy's working relationship.

51. The Murphys expressed a desire to move on and return to a healthy working environment.

52. During the meeting, Marchal disclosed that he had not worked or interacted with many African Americans and offered that as an explanation for his treatment of Mrs. Murphy.

53. Marchal revealed that his attempt to deceive Tumeo into disciplining Mrs. Murphy was motivated by anti-African American animus.

54. Marchal revealed he was uncomfortable with an African American disagreeing with his judgment.

55. The meeting ended unproductively with Marchal refusing to change his behavior.

56. On or about September 19, 2022, Marchal reported the Murphys to human resources, alleging that the meeting to resolve their differences was "intimidation."

57. Marchal's characterization of the meeting as "intimidation" relies on casting the Murphys as the harmful African American stereotypes of an "Angry Black Man" and "Angry Black Woman."

58. Marchal's report to human resources was rooted in racial discrimination.

59. The Murphys explained the ongoing tension between Marchal and Mrs. Murphy to Honda's human resources as part of the investigation into Marchal's "intimidation" complaint.

6



60. Honda's human resources disregarded the Murphys' explanation and purpose for the meeting with Marchal.

61. Honda's human resources disciplined the Murphys based on Marchal's report.

62. The disciplinary action based on Marchal's report was racial discrimination.

63. In or around April 2023, Honda transferred Marchal to another department.

64. In or around December 2023, Honda transferred Marchal back to the final repair area of the paint department.

65. In or around December 2023, Honda reassigned Marchal to be Mrs. Murphy's line support staff.

66. On or about February 22, 2024, Marchal recommended Mrs. Murphy for discipline, alleging that her fingernails were too long for the painting department regulations.

67. Based on information and belief, Mrs. Murphy's non-African American coworkers were not recommended for discipline for having fingernails of the same length.

68. Marchal's true purpose for recommending Mrs. Murphy for discipline regarding her fingernails was racial discrimination.

69. Marchal's true purpose for recommending Mrs. Murphy for discipline regarding her fingernails was retaliation against the Murphys' opposition to Marchal's previous racially discriminatory discipline.

70. On or about February 22, 2024, Honda disciplined Mrs. Murphy based on Marchal's complaint.

71. On or about February 23, 2024, Mrs. Murphy contested the disciplinary action.

72. Mrs. Murphy's fingernail length was within Honda's regulations.



73. Honda's human resources rescinded the disciplinary action based on Mrs. Murphy's fingernail length complying with Honda's regulations.

74. Mrs. Murphy recounted to human resources that Marchal had previously recommended her for discipline on a false basis.

75. Mrs. Murphy expressed concern that Marchal was targeting her for discipline.

76. Honda took no prompt remedial action to address Mrs. Murphy's concern about Marchal's false disciplinary reports.

77. On or about February 23, 2024, Marchal reported Mrs. Murphy again for discipline to Honda's human resources, alleging that Mrs. Murphy threatened him.

78. Mrs. Murphy did not threaten Marchal.

79. Marchal reported Mrs. Murphy for discipline based on race discrimination, evoking the "Angry Black Woman" stereotype.

80. Marchal's true purpose for recommending Mrs. Murphy for discipline was retaliation against the Murphys' opposition to Marchal's previous racially discriminatory discipline.

81. Mrs. Murphy told Mr. Murphy that Marchal was targeting her for discipline again.

82. Mr. Murphy reported Marchal for targeting Mrs. Murphy for discipline to Bill Temple.

83. Temple is White.

84. Temple works as a Manufacturing Production Capacity Planning Specialist for Honda.

85. Temple is the most senior manager at the Marysville Auto Plant.

86. Temple did not play a role in hiring the Murphys.

87. Mr. Murphy believed involving Temple was the only way to protect Mrs. Murphy from further false disciplinary action, given that Honda's human resources had failed to protect her.



88. Temple and Honda's human resources began an investigation into Marchal's allegations that Mrs. Murphy threatened Marchal.

89. On or about February 23, 2024, Honda suspended Mrs. Murphy pending the investigation.

90. Honda did not suspend Marchal pending the investigation, despite the Murphys' report of unjustified targeting discipline and retaliation.

91. On or about February 24, 2024, Mr. Murphy walked by Marchal at work.

92. As they crossed paths, Marchal gloated to Mr. Murphy, "Oh, you are still here? I thought I took care of that."

93. Marchal expressed satisfaction that he had convinced Honda to take adverse actions against the Murphys.

94. Mr. Murphy reported Marchal's gloating regarding his most recent discipline report to Temple.

95. Mr. Murphy asked to leave early to avoid potential false allegations made against him by Marchal.

96. Temple permitted Mr. Murphy to leave early from work.

97. On or about February 27, 2024, Amber Perez interviewed the Murphys regarding the investigation into Marchal's allegations that Mrs. Murphy threatened him.

98. Perez's race is White.

99. Perez's ethnic heritage is Hispanic.

100. Perez works as an Associate Resources Senior Specialist in Honda's human resources.

101. The Murphys explained their history with Marchal and demonstrated his history of bringing false allegations to discipline Mrs. Murphy.



102. Perez suspended Mr. Murphy pending an investigation alleging misconduct because he had reported Marchal for targeting Mrs. Murphy to Temple following the interview.

103. Perez suspended Mr. Murphy in retaliation for his report of racial discrimination against Mrs. Murphy.

104. Perez suspended Mr. Murphy in retaliation for his report of retaliation against Mrs. Murphy.

105. On or about March 7, 2024, Perez and Jenkins met with Mrs. Murphy to discuss the results of Honda's investigation.

106. Jenkins is White.

107. Jenkins is Mrs. Murphy's supervisor.

108. Jenkins did not play a role in hiring Mrs. Murphy.

109. Perez told Mrs. Murphy that Marchal's allegation that she threatened him was unsubstantiated.

110. Honda did not discipline Marchal for his false report that Mrs. Murphy threatened him despite the results of their investigation.

111. Perez disciplined Mrs. Murphy because Mrs. Murphy reported that Marchal was targeting her for discipline ("Perez's Discipline").

112. Perez disciplined Mrs. Murphy despite her own investigation aligning with Mrs. Murphy's complaint that she had threatened Marchal was false.

113. Perez's Discipline was racial discrimination.

114. Perez's Discipline was retaliation for reporting racial discrimination.

115. Jenkins approved Perez's Discipline.

116. Based on Perez's Discipline, Honda demoted Mrs. Murphy from the final repair area of the paint department to the assembly department.



117. Working as a production associate in the assembly department required lifting/moving vehicle parts of 20lbs or greater.

118. Working as a production associate in the assembly department required working around hot, heavy machinery.

119. Working as a production associate in the assembly department required fast-paced repetitive motions, including bending, lifting, and pushing/pulling carts.

120. Working as a production associate in the assembly department had materially worse working conditions than Mrs. Murphy's position in the paint department.

121. Mrs. Murphy's demotion to the assembly department was an adverse action.

122. Mrs. Murphy's demotion to the assembly department was an adverse employment action.

123. Mrs. Murphy's demotion to the assembly department was racial discrimination.

124. Mrs. Murphy's demotion to the assembly department was retaliation for opposing racial discrimination.

125. Based on information and belief, Marchal was not demoted for making a false, unsubstantiated report that Mrs. Murphy threatened him.

126. Mrs. Murphy opposed her demotion to the assembly department.

127. Mrs. Murphy told Perez and Jenkins that she was pregnant.

128. Mrs. Murphy told Perez and Jenkins that she was concerned that the working conditions of the assembly department created a risk for her pregnancy.

129. Mrs. Murphy asked to remain in the paint department as an accommodation for her pregnancy.

130. Perez and Jenkins refused to engage in the interactive process regarding a pregnancy accommodation.

11



131. Perez and Jenkins refused to reconsider demoting Mrs. Murphy.

132. Perez and Jenkins terminated Mrs. Murphy's employment with Honda for refusing to accept the demotion to the assembly department ("Mrs. Murphy's Termination").

133. Perez and Jenkins demoted Mrs. Murphy to the assembly department, knowing that she would likely refuse the demotion to create a justification for Honda to terminate her employment.

134. Mrs. Murphy's Termination was an adverse action.

135. Mrs. Murphy's Termination was an adverse employment action.

136. Mrs. Murphy's Termination was racial discrimination.

137. Mrs. Murphy's Termination was retaliation for opposing racial discrimination.

138. Honda's refusal to engage in the interactive process to accommodate Mrs. Murphy's pregnancy was pregnancy discrimination.

139. On or about March 7, 2024, Cooney and Zach Latimer met with Mr. Murphy to discuss the results of Honda's investigation.

140. Cooney is White.

141. Cooney is employed as an Associate Resources Leader with Honda's human resources.

142. Latimer is White.

143. Latimer is employed as a Department Manager with Honda.

144. Latimer was Mr. Murphy's supervisor.

145. Latimer did not play a role in hiring Mr. Murphy.

146. Cooney disciplined Mr. Murphy because Mr. Murphy reported that Marchal was targeting Mrs. Murphy for discipline ("Cooney's Discipline").



147. Cooney disciplined Mr. Murphy despite Honda's investigation being unable to substantiate Marchal's accusation against Mrs. Murphy.

148. Cooney's Discipline was racial discrimination.

149. Cooney's Discipline was retaliation for reporting racial discrimination.

150. Cooney's Discipline was retaliation for reporting racial discrimination against Mrs. Murphy.

151. Cooney's Discipline was retaliation for reporting retaliation against Mrs. Murphy for opposing racial discrimination.

152. Latimer approved Cooney's Discipline.

153. Based on Cooney's Discipline, Honda demoted Mr. Murphy from a line support staff in the final repair area of the paint department to a production associate in the assembly department.

154. Line support staff have a higher position within Honda's organizational structure than a production associate.

155. The demotion from line support staff to production associate would remove Mr. Murphy's ability to recommend employees for discipline.

156. The demotion to the assembly department from the paint department would require Mr. Murphy to engage in substantially more physically demanding labor.

157. Working as a production associate in the assembly department had materially worse working conditions than Mr. Murphy's position in the paint department.

158. Mr. Murphy's demotion to the assembly department was an adverse action.

159. Mr. Murphy's demotion to the assembly department was an adverse employment action.

160. Mr. Murphy's demotion to the assembly department was racial discrimination.

161. Mr. Murphy's demotion to the assembly department was retaliation for opposing racial discrimination.



162. Based on information and belief, Marchal was not disciplined based on Mr. Murphy's report that Marchal was gloating about convincing Honda to take adverse action against the Murphys.

163. Mr. Murphy opposed his demotion to the assembly department.

164. Mr. Murphy resumed his suspension following the meeting with Cooney and Latimer pending the reconsideration of the decision to demote Mr. Murphy.

165. On or about March 20, 2024, Honda contacted Mr. Murphy, insisting that he return to work in the assembly department.

166. Mr. Murphy responded that he continued to refuse the demotion.

167. Mr. Murphy reiterated that he had been wrongfully demoted and that Honda should review Cooney and Latimer's decision.

168. On or about March 21, 2024, Honda terminated Mr. Murphy's employment ("Mr. Murphy's Termination").

169. Cooney and Latimer demoted Mr. Murphy to the assembly department, knowing that he would likely refuse the demotion to create a justification for Honda to terminate his employment.

170. Mr. Murphy's Termination was an adverse action.

171. Mr. Murphy's Termination was an adverse employment action.

172. Mr. Murphy's Termination was racial discrimination.

173. Mr. Murphy's Termination was retaliation for opposing racial discrimination.

174. Defendants knowingly terminated the Murphys' employment.

175. Defendants knowingly took adverse employment actions against the Murphys.

176. Defendants knowingly took adverse actions against the Murphys.



177. Defendants intentionally terminated the Murphys' employment.

178. Defendants intentionally took an adverse employment action against the Murphys.

179. Defendants intentionally took adverse actions against the Murphys.

180. Defendants knew that terminating the Murphys' employment would cause the Murphys harm, including economic harm.

181. Defendants willfully terminated the Murphys' employment.

182. Defendants willfully took adverse employment actions against the Murphys.

183. Defendants willfully took adverse actions against the Murphys.

184. As a direct and proximate result of Defendants' conduct, the Murphys suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT I: RACE DISCRIMINATION IN VIOLATION OF TITLE VII.
**(Brought by Plaintiff Mrs. Murphy against Defendant Honda)**

185. Mrs. Murphy restates each and every prior paragraph of this Complaint as if it were fully restated herein.

186. Mrs. Murphy is a member of a statutorily protected class based on her race under Title VII.

187. Honda treated Mrs. Murphy worse than other similarly situated employees based on her race.

188. During Mrs. Murphy's employment at Honda, Mrs. Murphy was subjected to discriminatory treatment based on her race.

189. Honda terminated Mrs. Murphy's employment without just cause.

190. Honda terminated Mrs. Murphy's employment based on her race.

191. Honda's discrimination against Mrs. Murphy based on her race violates Title VII.

192. As a result of Honda's wrongful conduct in violation of Title VII, Mrs. Murphy has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive, equitable, and compensatory monetary relief.



193. As a result of Honda's wrongful conduct in violation of Title VII, Mrs. Murphy has suffered mental anguish and emotional distress.

194. In violating the rights of Mrs. Murphy as alleged above, Honda acted with malice or reckless indifference to the rights of Mrs. Murphy, thereby entitling her to an award of punitive damages.

### COUNT II: RACE DISCRIMINATION IN VIOLATION OF SECTION 1981.
**(Brought by Plaintiff Mrs. Murphy against Defendant Honda)**

195. Mrs. Murphy restates and incorporates by reference each and every prior paragraph of this Complaint as if it were fully restated herein.

196. Honda's termination violated Mrs. Murphy's rights under Section 1981.

197. Honda, by termination, intentionally deprived Mrs. Murphy of the same rights as are enjoyed by White citizens to the creation, performance, enjoyment, and all benefits and privileges of her employment relationship with Honda, in violation of Section 1981.

198. As a result of Honda's wrongful conduct, in violation of Section 1981, Mrs. Murphy has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive, equitable, and compensatory monetary relief.

199. As a result of Honda's wrongful conduct, in violation of Section 1981, Mrs. Murphy has suffered mental anguish and emotional distress.

200. In violating the rights of Mrs. Murphy as alleged above, Honda acted with malice or reckless indifference to the rights of Mrs. Murphy, thereby entitling her to an award of punitive damages.



## COUNT III: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*
**(Brought by Plaintiff Mrs. Murphy against Defendant Honda)**

201. Mrs. Murphy restates each and every prior paragraph of this Complaint as if it were fully restated herein.

202. Mrs. Murphy is a member of a statutorily protected class based on her race under R.C. § 4112.01 *et seq*.

203. Honda treated Mrs. Murphy worse than other similarly situated employees based on her race.

204. During Mrs. Murphy's employment at Honda, Mrs. Murphy was subjected to discriminatory treatment based on her race.

205. Honda terminated Mrs. Murphy's employment without just cause.

206. Honda terminated Mrs. Murphy's employment based on her race.

207. Honda's discrimination against Mrs. Murphy based on her race violates R.C. § 4112.01 *et seq*.

208. As a result of Honda's wrongful conduct in violation of Ohio R.C. § 4112.02(A), Mrs. Murphy has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive, equitable, and compensatory monetary relief.

209. As a result of Honda's wrongful conduct in violation of Ohio R.C. § 4112.02(A), Mrs. Murphy has suffered mental anguish and emotional distress.

210. In violating the rights of Mrs. Murphy as alleged above, Honda acted with malice or reckless indifference to the rights of Mrs. Murphy, thereby entitling her to an award of punitive damages.



## COUNT IV: FAILURE TO ACCOMMODATE IN VIOLATION OF THE PWFA
### (Brought by Plaintiff Mrs. Murphy against Defendant Honda)

211. Mrs. Murphy restates each and every prior paragraph of this Complaint as if it were fully restated herein.

212. Under the PWFA, it is an unlawful employment practice not to make reasonable accommodations to known limitations related to pregnancy, childbirth, or related medical conditions.

213. Mrs. Murphy informed Honda of her pregnancy.

214. Mrs. Murphy informed Honda of her concern that the demanding physical labor of working in the assembly department would place her pregnancy at risk.

215. The paint department had less demanding physical labor than the assembly department.

216. Mrs. Murphy requested to remain in the paint department as an accommodation for her pregnancy.

217. Mrs. Murphy's requested accommodation was reasonable.

218. Allowing Mrs. Murphy to continue to work in the paint department would not have created an undue hardship for Honda.

219. Honda denied Mrs. Murphy's request for accommodation.

220. Honda failed to engage in the interactive process to provide an alternative accommodation.

221. Honda violated the PWFA by failing to provide Mrs. Murphy with a reasonable accommodation.

222. As a direct and proximate result of Honda's conduct, Mrs. Murphy suffered and will continue to suffer damages.

18



## COUNT V: RETALIATION IN VIOLATION OF TITLE VII.
### (Brought by Plaintiff Mrs. Murphy against Defendant Honda)

223. Mrs. Murphy restates each and every prior paragraph of this Complaint as if it were fully restated herein.

224. As a result of Honda's discriminatory conduct described above, Mrs. Murphy opposed the disparate treatment she experienced on the basis of her race.

225. Subsequent to Mrs. Murphy's opposition to disparate treatment on the basis of race, Honda disciplined Mrs. Murphy without just cause.

226. Subsequent to Mrs. Murphy's opposition to disparate treatment on the basis of her race, Honda terminated Mrs. Murphy's employment.

227. Honda's actions were retaliatory in nature based on the Murphys' opposition to the unlawful discriminatory conduct.

228. Under Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

229. As a result of Honda's wrongful conduct in violation of Title VII, Mrs. Murphy has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive, equitable, and compensatory monetary relief.

230. As a result of Honda's wrongful conduct in violation of Title VII, Mrs. Murphy has suffered mental anguish and emotional distress.

231. In violating the rights of Mrs. Murphy as alleged above, Honda acted with malice or reckless indifference to the rights of Mrs. Murphy, thereby entitling her to an award of punitive damages.



## COUNT VI: RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*
### (Brought by Plaintiff Mrs. Murphy against Defendant Honda)

232. Mrs. Murphy restates each and every prior paragraph of this Complaint as if it were fully restated herein.

233. As a result of Honda's discriminatory conduct described above, Mrs. Murphy opposed the disparate treatment she experienced on the basis of her race.

234. Subsequent to Mrs. Murphy's opposition to disparate treatment on the basis of race, Honda disciplined Mrs. Murphy without just cause.

235. Subsequent to Mrs. Murphy's opposition to disparate treatment on the basis of her race, Honda terminated Mrs. Murphy's employment.

236. Honda's actions were retaliatory in nature based on the Murphys' opposition to the unlawful discriminatory conduct.

237. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

238. As a result of Honda's wrongful conduct in violation of R.C. § 4112.02(I), Mrs. Murphy has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive, equitable, and compensatory monetary relief.

239. As a result of Honda's wrongful conduct in violation of R.C. § 4112.02(I), Mrs. Murphy has suffered mental anguish and emotional distress.

240. In violating the rights of Mrs. Murphy as alleged above, Honda acted with malice or reckless indifference to the rights of Mrs. Murphy, thereby entitling her to an award of punitive damages.



## COUNT VII: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION
### (Brought by Plaintiff Mrs. Murphy against Defendants Marchal and Jenkins)

241. Mrs. Murphy restates each and every prior paragraph of this Complaint as if it were fully restated herein.

242. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

243. Marchal and Jenkins aided, abetted, incited, coerced, and/or compelled Honda's discriminatory termination of Mrs. Murphy's employment.

244. Marchal and Jenkins aided, abetted, incited, coerced, and/or compelled Honda's discriminatory treatment of Mrs. Murphy.

245. Defendants violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting, inciting, and/or compelling discrimination.

246. As a direct and proximate result of Defendants' conduct, Mrs. Murphy has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT VIII: RACE DISCRIMINATION IN VIOLATION OF TITLE VII.
### (Brought by Plaintiff Mr. Murphy against Defendant Honda)

247. Mr. Murphy restates each and every prior paragraph of this Complaint as if it were fully restated herein.

248. Mr. Murphy is a member of a statutorily protected class based on his race under Title VII.

249. Honda treated Mr. Murphy worse than other similarly situated employees based on his race.

250. During Mr. Murphy's employment at Honda, Mr. Murphy was subjected to discriminatory treatment based on his race.

251. Honda terminated Mr. Murphy's employment without just cause.



252. Honda terminated Mr. Murphy's employment based on his race.

253. Honda's discrimination against Mr. Murphy based on his race violates Title VII.

254. As a result of Honda's wrongful conduct in violation of Title VII, Mr. Murphy has been denied employment opportunities providing substantial compensation and benefits, thereby entitling him to injunctive, equitable, and compensatory monetary relief.

255. As a result of Honda's wrongful conduct in violation of Title VII, Mr. Murphy has suffered mental anguish and emotional distress.

256. In violating the rights of Mr. Murphy as alleged above, Honda acted with malice or reckless indifference to the rights of Mr. Murphy, thereby entitling him to an award of punitive damages.

**COUNT IX: RACE DISCRIMINATION IN VIOLATION OF SECTION 1981.**
**(Brought by Plaintiff Mr. Murphy against Defendant Honda)**

257. Mr. Murphy restates and incorporates by reference each and every prior paragraph of this Complaint as if it were fully restated herein.

258. Honda's termination violated Mr. Murphy's rights under Section 1981.

259. Honda, by termination, intentionally deprived Mr. Murphy of the same rights as are enjoyed by White citizens to the creation, performance, enjoyment, and all benefits and privileges of his employment relationship with Honda, in violation of Section 1981.

260. As a result of Honda's wrongful conduct, in violation of Section 1981, Mr. Murphy has been denied employment opportunities providing substantial compensation and benefits, thereby entitling him to injunctive, equitable, and compensatory monetary relief.

261. As a result of Honda's wrongful conduct, in violation of Section 1981, Mr. Murphy has suffered mental anguish and emotional distress.



262. In violating the rights of Mr. Murphy as alleged above, Honda acted with malice or reckless indifference to the rights of Mr. Murphy, thereby entitling him to an award of punitive damages.

**COUNT X: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***
**(Brought by Plaintiff Mr. Murphy against Defendant Honda)**

263. Mr. Murphy restates each and every prior paragraph of this Complaint as if it were fully restated herein.

264. Mr. Murphy is a member of a statutorily protected class based on his race under R.C. § 4112.01 *et seq*.

265. Honda treated Mr. Murphy worse than other similarly situated employees based on his race.

266. During Mr. Murphy's employment at Honda, Mr. Murphy was subjected to discriminatory treatment based on his race.

267. Honda terminated Mr. Murphy's employment without just cause.

268. Honda terminated Mr. Murphy's employment based on his race.

269. Honda's discrimination against Mr. Murphy based on his race violates R.C. § 4112.01 *et seq*.

270. As a result of Honda's wrongful conduct in violation of Ohio R.C. § 4112.02(A), Mr. Murphy has been denied employment opportunities providing substantial compensation and benefits, thereby entitling him to injunctive, equitable, and compensatory monetary relief.

271. As a result of Honda's wrongful conduct in violation of Ohio R.C. § 4112.02(A), Mr. Murphy has suffered mental anguish and emotional distress.

272. In violating the rights of Mr. Murphy as alleged above, Honda acted with malice or reckless indifference to the rights of Mr. Murphy, thereby entitling him to an award of punitive damages.



## COUNT XI: RETALIATION IN VIOLATION OF TITLE VII.
### (Brought by Plaintiff Mr. Murphy against Defendant Honda)

273. Mr. Murphy restates each and every prior paragraph of this Complaint as if it were fully restated herein.

274. As a result of Honda's discriminatory conduct described above, Mr. Murphy opposed the disparate treatment she experienced on the basis of his race.

275. Subsequent to Mr. Murphy's opposition to disparate treatment on the basis of race, Honda disciplined Mr. Murphy without just cause.

276. Subsequent to Mr. Murphy's opposition to disparate treatment on the basis of his race, Honda terminated Mr. Murphy's employment.

277. Honda's actions were retaliatory in nature based on the Murphys' opposition to the unlawful discriminatory conduct.

278. Under Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

279. As a result of Honda's wrongful conduct in violation of Title VII, Mr. Murphy has been denied employment opportunities providing substantial compensation and benefits, thereby entitling him to injunctive, equitable, and compensatory monetary relief.

280. As a result of Honda's wrongful conduct in violation of Title VII, Mr. Murphy has suffered mental anguish and emotional distress.

281. In violating the rights of Mr. Murphy as alleged above, Honda acted with malice or reckless indifference to the rights of Mr. Murphy, thereby entitling him to an award of punitive damages.



## COUNT XII: RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*
### (Brought by Plaintiff Mr. Murphy against Defendant Honda)

282. Mr. Murphy restates each and every prior paragraph of this Complaint as if it were fully restated herein.

283. As a result of Honda's discriminatory conduct described above, Mr. Murphy opposed the disparate treatment she experienced on the basis of his race.

284. Subsequent to Mr. Murphy's opposition to disparate treatment on the basis of race, Honda disciplined Mr. Murphy without just cause.

285. Subsequent to Mr. Murphy's opposition to disparate treatment on the basis of his race, Honda terminated Mr. Murphy's employment.

286. Honda's actions were retaliatory in nature based on the Murphys' opposition to the unlawful discriminatory conduct.

287. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

288. As a result of Honda's wrongful conduct in violation of R.C. § 4112.02(I), Mr. Murphy has been denied employment opportunities providing substantial compensation and benefits, thereby entitling him to injunctive, equitable, and compensatory monetary relief.

289. As a result of Honda's wrongful conduct in violation of R.C. § 4112.02(I), Mr. Murphy has suffered mental anguish and emotional distress.

290. In violating the rights of Mr. Murphy as alleged above, Honda acted with malice or reckless indifference to the rights of Mr. Murphy, thereby entitling him to an award of punitive damages.



### COUNT XIII: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION
### (Brought by Plaintiff Mr. Murphy against Defendants Marchal and Cooney)

291. Mr. Murphy restates each and every prior paragraph of this Complaint as if it were fully restated herein.

292. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

293. Marchal and Cooney aided, abetted, incited, coerced, and/or compelled Honda's discriminatory termination of Mr. Murphy's employment.

294. Marchal and Cooney aided, abetted, incited, coerced, and/or compelled Honda's discriminatory treatment of Mr. Murphy.

295. Defendants violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting, inciting, and/or compelling discrimination.

296. As a direct and proximate result of Defendants' conduct, Mr. Murphy has suffered and will continue to suffer damages, including economic and emotional distress damages.

### DEMAND FOR RELIEF

WHEREFORE, Plaintiffs Myesha Murphy and Jayse Murphy respectfully request that this Honorable Court grant the following relief:

(a) An order directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated;

(b) An award of damages totaling in excess of $25,000 for the following:

   a. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate the Murphys for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security, and other benefits of employment;



b. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate the Murphys for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

c. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate the Murphys for harm to their professional and personal reputations and loss of career fulfillment;

d. An award of damages for any and all other monetary and/or non-monetary losses suffered by the Murphys in an amount to be determined at trial, plus prejudgment interest;

(c) An award of punitive damages in excess of $25,000;

(d) An award of costs that the Murphys have incurred in this action, as well as the Murphys' reasonable attorneys' fees to the fullest extent permitted by law; and

(e) Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,

/s/ Trisha M. Breedlove
Trisha M. Breedlove (0095852)
Paul Filippelli (0097085)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (614) 401-2708
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
           paul.filippelli@spitzlawfirm.com

*Attorneys for Plaintiffs Myesha Murphy and Jayse Murphy*

27



28

## JURY DEMAND

Plaintiffs Myesha Murphy and Jayse Murphy demand a trial by jury by the maximum number of jurors permitted.

/s/ *Trisha M. Breedlove*
Trisha M. Breedlove (0095852)

*Attorney for Plaintiffs Myesha Murphy and Jayse Murphy*

